1-4-5-4-5-0 Left Fork Mining Company Incorporated, et al. v. Irving Hooker, et al. Arguments not to exceed 15 minutes per side. Thank you, Williams, for appellants. Thank you. May it please the Court, Counsel, good afternoon. I am John Williams. I represent the appellants. This matter, I have 12 minutes for argument. I've reserved 3 for rebuttal. The issue that we're here on today is whether the complaint that was filed on behalf of my clients in the District Court states a claim under Bivens, a Bivens action against the appellees who are all employees of the United States Department of Labor, Mine Safety, and Health Administration. The District Court's decision must be reversed because the Court's finding that there was an adequate administrative remedy for my clients, and that's the crux of the decision, is simply incorrect under the structure that was... I'm sorry, ma'am? And are you saying that adequate must include complete relief? No, ma'am, but it must, we believe under the case law, that it must include some form of relief, which would be, if not completely equal, substantially equal to what you could get by proceeding in court. The administrative system that is in place under the Mine Safety and Health Act... There was clearly an administrative system in place. Yes, sir. No doubt of that. No doubt about that. That administrative procedure under the Mine Safety and Health Act of 1977 allows the operator, one of my client's appellant, to come in and contest an order or a citation issued by MSHA, as we refer to it in the coal fields, and you can do that, but under that system, the relief you are granted is simply, at most, you can vacate the citation or order. In this situation, an order had been issued through the appellant, the appellees, that shut off the power to our mine. When the power was shut off to the mine... Because of the methane leakages. That was the, that was what was claimed. You think that was false? Yes, sir. They just made it all up? Yes, sir. Really? The order... Doesn't the administrative procedure, though, permit expedited review, so that if one thinks that it's false, one can get it before the administrative body and challenge that? Yes, ma'am. And in this situation, we had an order issued on January 12 of 2002 that shut the power off to the mine, causing it to begin to flood because there were a series of pumps that pumped water out of the mine. We, after five days, I believe, of trying to get this resolved with MSHA, without going to the administrative proceeding, a notice of contest was filed, I believe on the 17th of January, with a request for an expedited hearing. That request was granted. We were given a hearing on January 30 and 31, two weeks later. That was as quick as the commission could give us a date. During that two-week period, our mine continues to flood. We have our hearing on January 30 and 31. Two months later, we get a ruling from Administrative Law Judge Andrews, ruling in our favor on every point. He vacates the order that ordered us to shut off the power. What was the basis of the ruling? It was that there was a failure on the part of the mine, but what? The judge's ruling was that this type of order under Section 104B of the Mine Act does not give MSHA the authority. It's an order that can only be issued in relation to failure to abate a violation. It was a modification of an earlier order that he also found was invalid because we had abated the condition that the first order had been issued. We called it the original order, I believe, in our complaint. What the judge found was its original order should never have been issued, and this modification that required us to shut the power off to the mine was unrelated to what the first order was about and should not have been issued and that there was no authority, he says in his ruling, that there was no authority under the Mine Act to do that. But did he find that the actions of the mine safety employees was motivated by bad faith or retaliation or retribution or any of those? There was no specific finding of that, Your Honor, and that wasn't an issue before him. That wasn't anything that would have been necessary to his ruling. His ruling is simply whether or not the orders issued were valid orders and should have been vacated. One other question. At the time you had the hearing, between the time the hearing was concluded and the judge issued the vacature order, was there some kind of stay in place that allowed you to then go in and turn the pumps back on? Did you not get that authority until the order was issued? There was no stay in place, and under the Mine Act, once the mine was flooded, in order to dewater the mine and go back in, you have to submit a plan to the Mine Safety and Health Administration to be able to go back in and do that. That process continued up through the date of filing the complaint and we never did dewater the mine. Counsel, it sounds to me like there was some bad blood between the Mine Safety Labor Department people and the mine people, and if you would look at footnote 4 on page 6 of the opposing counsel's brief, it recites, and I don't know that I really understand all the lingo that's used in this specific area, but Left Fork had 12 Section 104 orders pending for failure to abate existing hazards. Left Fork was issued 84 Section 104B orders and 84 Section 104D orders requiring withdrawal of all miners except those required to abate the condition, and that, I don't know quite what the relevance of this is, but maybe there is a relationship. Finally, Manalapan Mining Company, along with three mine managers named here, were criminally indicted for failure to comply with the Mine Safety Act. Presumably they had some connection. There was some interlocking connection between the two, but I don't know if that's the relevance. But what is all that about? Can you explain that? Well, Your Honor, I don't know what the relevance of it is to the issue about these orders. How many times had this mine been cited by these people in the past? This mine had a lot of citations against it, Your Honor. It did, and it had a lot of outstanding citations. That's correct. Did it have a lot of penalties, fines being levied and so on? Yes, sir. Have they paid all those? They're in bankruptcy now. That's being dealt with through the Bankruptcy Court. I don't know if any of those penalties will be paid when the company is finally liquidated. So you're really representing the trustee in bankruptcy? I am representing the trustee to the extent of the claim for Left Fork Mining Company. The other appellants are not in. I believe of the other appellants, Bennett Resources is also in bankruptcy, but I do not believe that the other ones are. I will say that I'm not involved in bankruptcy. Who are these other people? Left Fork seems to be the name used, but who are these other people? Left Fork is the operator of the mine. Bennett Resources owns the equipment that is underground, has been destroyed. Cumberland River Energies was a sales company. Now, these all, they don't have the same ownership, but they have a lot of common ownership. It's family companies. Cumberland River Energies was a sales company selling the coal, and then Black Star Land and Malapan Land Company actually owned the coal. Who is Malapan Land? It is a land company that owns part of the coal that is being mined in this mine. They're all together economically, so to speak. Yes, yes. It's just they all had a particular. What is this indictment of Malapan people, what is that all about? That is Malapan Mining Company, which is another operating company that owned by the same family. That related to things that went on at other mines that were owned by Malapan. It didn't have anything to do with this mine at issue here. Same family running the mine? Yes, sir. Yes, sir. Yes, sir. So there must have been some kind of bad blood here between the two sides, huh? And at risk of going, I guess, far afield of the record, Your Honor, we believe if the case had not been dismissed and we'd gone into discovery, we think in discovery we would have found out a lot about a lot of bad blood between the companies and the folks in District 7. That's the root of this case, all this bad blood. It may well be. It may well be. But it doesn't change the circumstances we found ourselves in where we availed ourselves of the procedure that was in place, and yet our mine was destroyed, our coal is unmineable, our equipment is destroyed, and we had no vehicle. And they knew this would happen when they did this, that we could not be heard before the damage was done. I'm sorry. Okay, first of all, did you plead that there was any bad faith on the part of the defendants or malice or anything like that? I believe, Your Honor, the pleading is not in those specific terms. The pleading is in terms of them acting intentionally to do these things. I don't know that they specifically say maliciously. You mean their actions were they did it with knowledge of what? Which is different from saying it's bad faith or malicious, right? I suppose it is, Your Honor. But we believe the actions that were done, and we allege that were done with the specific knowledge that we were not going to be able to get any relief. And what was driven behind this was their desire to force us into position to seal up the mine. Okay, and so you negotiated for five days, and then you asked for an expedited hearing. Yes, ma'am. And there was no effort to get it further expedited or to go to court to get an injunction or anything like that, right? We're not entitled to any injunctive relief under the Mine Act. We took the one avenue we had available. Okay, and then did you? Well, you're not entitled to this relief under the Mine Act, either, are you? Well, the Mine Act doesn't speak to this, Your Honor. I agree with that. But there's a three-month delay in getting the answer, right? Yes, ma'am. So what happened during that time? Or did you argue before the ALJ that you need an immediate answer, that the mine's underwater every day, it's further underwater, and all of that? We drove that point in the hearing that we needed an answer as quickly as we could get one. Okay, and there's no procedure? There's no sort of administrative mandamus? There's no procedure to try to get a faster answer or anything like that? Ma'am, I practice in this area frequently every day, and I know of no way to seek a mandamus to make them move any more quickly than they do. Okay, and then when we talk about the Bivens requirements and the adequacy of a remedy, do you always have to be able to get money damages? I think the cases that were relied upon by the district court and by the appellees would indicate that there's always some element of compensation in those regulatory systems. It may not be 100% of what the claimant is wanting, but there is some element of compensation to at least put you somewhat in the position you would have been in had they not violated your rights. Aren't there many, many situations where basically you have to go through an administrative procedure, you'll eventually find out if you win or lose, and there's possibility that you would have suffered some economic harm in the interim? You're saying that all of those situations have to have some sort of a damage claim attached to them? I mean, what if you're waiting to get, like, a permit renewed or something, and it's backed up, and for some reason you're out of business for a time, or it's denied and you have to go through an appeal to get it back? Are you saying there has to be a remedy for you to get your lost income? I think in a situation that was similar to this, where you end up with a final order that was not appealed, where the administrative law judge rules that the administrative body acted wholly outside the law in what they did, I think you would be entitled to compensation if it was done under circumstances like this to deny you that day in court. I think when you look at some of the cases that are relied upon by the district court, that you have an element there, whether it's a civil service case or whatever, of compensation when the person goes through the process. If you're suing on behalf of the trustee in bankruptcy, doesn't the case have to be brought by the trustee in bankruptcy? And I don't understand the procedural posture of the case. My understanding, Your Honor, is that the trustee in bankruptcy is not paying for the litigation here, that the litigation is being paid for by the companies that are not in bankruptcy, and that we did not have to bring it through the bankruptcy. Well, aren't you bringing it on behalf of the company that is in bankruptcy? Yes, sir. And others, too. And others, too. I understand. But if you're bringing it on behalf of a bankrupt company, I don't... Is it Chapter 11 or what? It's Chapter 7. 7. I don't understand why procedurally you don't have to... Whatever you recover on behalf of Left Fork would seem to go to the creditors, right? That's my understanding. So doesn't the action here have to reflect that? Does the trustee know you're here? Yes. Yes, ma'am. So you have the trustee's approval? Yes, ma'am. The only thing the trustee could not give me approval for was to use assets of the bankruptcy estate to fund the litigation. So the funding of the litigation comes from the non-bankrupt companies. But any recovery will go to the trustee in bankruptcy? Yes, sir. That on behalf of Left Fork? That is my understanding. And these other plaintiffs, would any of them have been involved in the administrative proceedings? They could have. There's a mechanism that's rarely used where they could have intervened, but the relief that would have been granted to them would have been the same relief that Left Fork would have gotten, which would have been a ruling on the validity of the order. And then what's their standing? Their standing in this court? Yes. Their standing in this court is that they, too, were denied the opportunity to be heard before the government damaged them. Is this a due process case? Yes, ma'am. Okay, but it's a procedural due process case? Yes, ma'am. And you're saying that the violation is that they shut it down? I mean, I didn't understand that. But there's a statute that governs it. You're saying that the statute itself is unconstitutional? Ma'am, I'm saying that under these circumstances, the remedy that we had afforded through the administrative proceeding did not protect our rights. But that's only the administrative proceeding was only with respect to Left Fork? But one of the things that has been raised on that. That right? Yes. The other entities could have intervened, and that's one of the things that was raised. But they did not intervene? They did not intervene. So how have they been harmed exactly? They have lost the coal, which cannot be mined. One of them has lost all its equipment that it owned was underground. They lost the potential sales from the coal. Okay. And I want to ask you this question. First of all, I want to know what you assert is the best case that supports the position for which you're advocating. And I want you to answer that question in light of the fact that case law says that where Congress has acted comprehensively in a particular area, courts should presume that that failure to provide a damages remedy was not inadvertent and shouldn't really construe or shouldn't judicially create a damage remedy. So you're arguing that you should be entitled to proceed, and this court should allow this case to go back, go to a jury trial, so that they can consider an issue of damages. What's the best case that you can cite that supports your position? I honestly think the best case to support our position is Bivens itself, where the court recognized and quoted, I think, from Marbury v. Madison, that the very essence of civil liberty consists of the right of every individual to claim protection of the laws whenever he receives an injury. And the law, as it set up under the Mine Safety and Health Act, could not prevent our injury here. Okay. Any more questions? Thank you. Thank you. Thank you. May it please the Court. Cheryl Morgan on behalf of the Appalese. The Mine Act really, the beginning of the Mine Act, was enacted to protect the safety of the miners. And in this particular case, Bivens was enacted years ago, and there have been exactly two cases that have extended Bivens, Davis v. Passman and the Carlton case. And since that time, there have been no new cases that have extended the Bivens remedy. So in this particular case, and I think that, Judge Donald, you talked about this in your last question, that there really are only two circumstances in which Bivens is expanded. And if Congress has provided an alternative remedy like the Mine Act, then they don't want, I guess, for lack of a better phrase, courts to expand the Bivens remedy beyond that. Where is there a remedy in the Mine Act? I'm sorry? Where is there a remedy in the Mine Act? The Mine Act is a very specific act that has a very specific set of guidelines, for lack of a better word, by which somebody in the situation of left fork goes through the process of petitioning the ALJ and then the commission if they wanted to in the event of something that happened like what happened here. Now, their argument is more or less, we don't like what happened in this case. And so we'd like to sue the individuals. Well, it's more that they don't like what happened. They were shut down without authority and haven't been able to reopen and lost a lot of money because of it. Right. Well, you know, I think that under all of these cases that the Supreme Court has analyzed, and there have been a lot of situations where people have undergone harm and have had situations like this happen where they have had damages. But just because they have had damages doesn't mean that they can sue individuals under Bivens. There are some things about this case that are particularly troubling. Okay. One, obviously left fork says that they complied with the orders to correct certain things. They said they submitted their plan for remediation, for lack of a better term, and that that was actually before the appropriate body at the time that the Mind Safety Act employees were saying that you've got to do certain things to remediate it. You've got to seal this. You've got to prevent this. And they're saying we've done that, but we couldn't even get an answer. And so they're saying that the mind safety people basically did not and would not hear, would not review, would not acknowledge their efforts at compliance, if you will, and continued to demand more things that every time they would comply, either the game would change or something else would happen. And so those kind of things are certainly troubling. I'm sure your argument is that that didn't happen that way. Well, I think if you look at the underlying record in the ALJ's decision, you'll see that I think he refers to it as a lot of back and forth between, you know, the MSHA folks and left fork during that whole time period. And it was quite a lengthy time period that they were trying to get plans and so forth. It wasn't just a few weeks. I think it was several months that they were going on trying to get all this worked out. And in essence, I don't think it was that they were ignoring them. I think there were a lot of conversations that took place back and forth during the time period from sometime in 2010 all the way through 2011. And you have to remember that during this time period, we're talking about an organization, a mining company, Left Fork, that has a history of having literally hundreds of mining violations. And in 2010, Left Fork had the most mine violations of any company, I believe, and I'd have to go back and double check, but I believe in the country. And against this backdrop, they have, and you talked about bad blood. I'm not so sure if it was as much bad blood, Judge Merritt, as it was caution. And your position is they didn't want the miners to get blown up. Well, yeah. That's a nice way of putting it. They didn't, you know, it was, and, you know, when the Mine Act was passed in 77, it's all about, if you look at the preamble, it's all about mine safety. And the reason mine inspectors were even put in place in the first place was to protect. It was in reaction to a lot of miners getting blown up. It was. Beforehand. It was. And in the early 1900s, there were, you know, they averaged, I think, 1,500 or so mining fatalities a year. And after the Mine Act, that dropped off tremendously. Well, one of the things that the left work argues is that they're told to go in and make certain corrections, but the mine safety officials refuse then to allow them to go in and make those corrections. Right. I think at some point it becomes an issue of safety over property. And, you know, I'm not going to be the one to say, you know, the meter read one point whatever in methane, and so did this, are they lying, are they falsifying, are they, did it really read the one point whatever in methane? Should they have issued that order or this order, and did they do it because they were out to seek retribution for something? You know, I don't think there was any. It sounds like there was just a complete lack of trust between the two sides, right? I think there might. And there probably always will be a lack of trust, to be quite honest with you, between those entities, and that's yet another reason why if we go down the slope of imposing something like personal liability on mine inspectors for doing their job, then that undermines the whole, you know. Well, that would really go to qualified immunity, wouldn't it? Eventually, yes, yes. But it also goes to the second point of one of the special factors that hesitates or counsels against, you know what I'm trying to say, that counsels in favor of hesitating. Is there any problem here with the procedural posture of this case? It's a bankruptcy case now. Yeah. The money that is, if they should go to trial and so on, the money will go to the bankrupt estate, and yet the trustee is not a party to this case. And is there any, have you looked up any law about this problem, if there is a problem? Because I haven't. No, I haven't, Your Honor, and that was actually a fairly recent development that some of the parties have declared bankruptcy, not all of them. And what we've received is fairly scant in the way of Well, don't you think somebody ought to look it up and maybe brief the court on whether there is a problem? Because the case is not brought by the mining company Left Fork now. It's brought in favor of the creditors, right? And, Your Honor, I would also argue, too, that Well, I think we need to know something about that. In standing in this particular case, Left Fork was the only party that brought the administrative action. The other parties weren't even party to the administrative action. They could have, but they chose not to be. And did the bankruptcy exist prior to the filing of the action? No, it did not. So the action was filed pre-bankruptcy? Yes, it was. The bankruptcy has only occurred fairly recently. It only occurred We need to know what effect that is, if it has any. I mean, I don't know whether the Left Fork is the debtor, the bankrupt debtor, is fully in control now of the action when all of the proceeds would go to or much of the proceeds would go to the bankrupt state. You know, we need to find out about that. I have not received a notification that Left Fork has declared bankruptcy. So if they have declared bankruptcy Well, your colleague said that's what the situation is. Right. Like I said, I received notification about others, but if Left Fork has declared bankruptcy, I just learned that today. And then, what about the others? Now, are they all subject to the Mine Safety Act? They can intervene because they are similarly situated to Left Fork. And the Mine Act reads that if they have a stake, basically, financially or otherwise, they can intervene in any action that affects them. So they could have come into the administrative proceeding and they could have staked a claim, basically, to any outcome, and they chose not to. And they could have filed a Federal Tort Claims Act claim instead of filing this Bivens claim. Okay, well, let's talk about that. You're saying any of them could have, including Left Fork? Absolutely, and they chose not to. Okay, and then what would the tort have been? Any negligence, any of the torts that they, you know, the common law type, you know, that the government, the United States, was negligent. And you're saying that they could have proceeded with that? You don't think that would be subject to dismissal? Possibly. I'm not commenting on the merits of their claim. I'm just saying they could have availed themselves of that. And the Supreme Court has said that if you could have availed yourself of another remedy, whether it be… I know, but you're not conceding. I mean, let's say they had brought a tort action, and then you would have said, well, there's no tort action. And then they would have said, okay, then there's a Bivens action. You're not, I mean, are you… I'm not conceding that they would have been successful. Not successful, but would they have survived a motion to dismiss? I can't answer that question. It depends on the way you interpret the Federal Tort Claims Act, right? It does. Then maybe you shouldn't rely on it as an adequate remedy. I'm not relying on it as an adequate remedy. All I'm saying is it was a remedy that they did not take advantage of, and they could have. Maybe they could have. They knew they could have, and they chose not to. Maybe they did some research and found that it wouldn't work. Maybe they did. Maybe they did. But it was a possibility. Okay, and you're saying that the bankruptcy has been… Well, I'll let you finish first. Are you done? Okay. But in essence, the Supreme Court has made it quite clear that when there's an alternative remedy that is so specific, such as the Mine Act, the court has gone through a litany of other acts that are quite similar to the Mine Act in specificity and with other specific remedies. And by the way, it doesn't have to have a monetary remedy. The court in Western Radio Services, which is a fairly recent case, and it was not a Supreme Court case, but it referred to a Supreme Court case that said that it doesn't matter if there's been damages in the statute. It doesn't have to be a damages case. If there aren't damages at all, that's okay. There can be… Are you saying if there aren't damages or if there isn't a damage remedy? There wasn't a damage remedy. There doesn't have to be a damage remedy for the remedy to be sufficient. You don't have to be made absolutely whole for the remedy. Okay. Is there a difference between absolutely whole or is there a difference between no money damages at all and you can get different things? I'm not sure I follow you. Adequate relief. Yes, adequate relief does not have to be money damages. Okay. You can have adequate relief that has no money damages at all as opposed to there's some, but they don't correspond to what you could get to a court, in a court. I think I follow you, and yes. Adequate remedies can mean no money damages, and adequate remedies can also mean not necessarily what you would get if you could have direct access to district court. I think that's what you asked me. So it could also mean no money damages at all? Yes, it can mean that, and that's what the Supreme Court has said. Are there a lot of cases under questioning under Title VII, for example, about this? If a governmental employee is fired, for example, or something that you cannot sue the government under Bevin's independent action when there is an administrative procedure set up. Yes. And there are quite a few Title VII type cases, right? Yes, there are, because there's the Civil Service Act that basically covers that, and it says that that act is very specific, and Congress has put that in place. The question is whether this case is like those cases. Yes, and the same with like the Social Security Act is similar. Those kinds of acts Congress has made very specific, very comprehensive, and as those acts are very specific and comprehensive, even if those acts didn't provide for a monetary remedy, because Congress has seen fit to put those acts in place and has their very specific statutory schemes that are already in place, then it is not for the judiciary to superimpose a Bevin's remedy on top of those acts. The only exception would be the Federal Tort Claims Act, where Congress has explicitly said that a Bevin's remedy coexists with the Federal Tort Claims Act, and that is explicit in the FTCA. That's the only difference. Any questions? Thank you very much. Counsel, Left Fork has filed bankruptcy, is that correct? Yes, ma'am. Okay, and there are ongoing proceedings in the bankruptcy court? Yes, ma'am. And the court is aware of this proceeding? Was this carved out of the proceeding? I don't know if the court is aware of this proceeding or not. I've taken my instructions from the trustee. I don't know what he's done to advise the court about the litigation. And you don't know whether Left Fork listed this lawsuit on its schedules as property of the estate? I can't speak definitively to that. But you have been in communication with the trustee? Yes, ma'am. So it's likely that the trustee, recognizing that Left Fork's interest in the case would be property of the estate, has permitted you to go forward? Again, I don't know. But you said that you've taken instructions from the trustee. Didn't you say that? Yes, I have discussed this case with the trustee. Okay. Did he want you to bring the case? Or he didn't want to bring it? He said there were no assets in the estate that could be used to pay fees and expenses, was essentially the... Okay, and did he tell you then that he's not abandoning the claim, is he? Not to my knowledge. So you've got it on a contingent fee, is that it? No, sir. My fees, to the extent it's relevant, my fees are being paid by two of the entities. Bennett Resources, I know, is also in bankruptcy. I'm not sure about Cumberland River Energies. But Manalpan Land Company and Blackstar Land Company are not in bankruptcy. And my fees are paid by Manalpan Land Company. They're not in bankruptcy, but they're under indictment, is that it? No, sir. Manalpan Mining Company is a separate entity. Manalpan Land Company has no criminal charges at all against it. But it's... Who does have criminal charges related to this? Well, there were criminal charges against Manalpan Mining Company, but those were resolved. That was taken care of. No individuals? There were two individual employees that worked at other mines that were also indicted. I believe those were resolved, too. What would you like from them? It seems like to me that somebody ought to look up a little law and advise us as to whether there is any problem procedurally here about this case being brought independently of the trustee in bankruptcy in the sense that the trustee in bankruptcy is not a party to the case. And I don't know exactly what the bank...I'm not a bankruptcy expert by any means, what the bankruptcy law says about what has to be done in that respect. How about something from the trustee with that? Well, no, the party... But it seems, though, that since the bankruptcy occurred after the filing of this case... Yes, ma'am. ...and the trustee is notified, it seems like even though you say the trustee has not abandoned this, but the limited purpose of this litigation it seems like the trustee obviously has in that the trustee is not willing to expend money to allow you to administer what might be an asset of the estate. It is piggybacking. And when I...I guess when I agree...when I said it hadn't been abandoned, I wasn't necessarily talking in terms of the legalities of the bankruptcy. I was answering the question more in terms of is the trustee aware of it and does he know the suit's going on? I don't know actually what has been filed in the bankruptcy action by the trustee related to this. Does the bankruptcy trustee have to agree to the fee if the proceeds of the action are coming to the bankrupt estate and have a relationship with the lawyer bringing the case? I mean... But you're doing it for free with respect to that client. You said that your fees are not coming out of the estate. My fees are not being paid out of the bankruptcy. Well, let's suppose you should end up with a million dollars here. Now, would you...for the left fork, now in bankruptcy, would you not expect any fee for that? I would expect to be paid my hourly rate, which I'm being paid for being here today. From somebody else? Yes. But you don't have any contract with the trustee in bankruptcy. I don't have a contingent fee with anyone. My fees are being paid on an hourly rate by Manalapan Land Company. So you would expect if you recover anything that goes to the bankrupt estate that nothing would come out of that sum? I wouldn't expect to get a bonus because I put money into the bankruptcy estate. No, I expect my fees to be paid on an hourly rate as they are. I guess one of the questions is, is the bankruptcy estate one of your clients? Do you have an understanding with the trustee that you are representing the estate? I do have an understanding with the trustee that I am representing the interest of left fork mining. Anything in writing? A written contract? No, we've had exchanges, I think, by email, but I don't think there's no representation agreement or anything like that, not to my knowledge. Would the court like supplemental briefing on this? I would. Is this where we are? I would, certainly. It's an added procedural problem in the case, and in the end, we don't know what the result of this case would be in the end, but it could make a difference down the road as to how the case is handled on behalf of the trustee, it would seem to me. Couldn't it? Well, I don't object to the supplemental briefing, but I think that those issues that would occur based on whatever this ruling would, would be properly administered in the bankruptcy forum so far as the bankruptcy interests are concerned, but I don't object to the supplemental briefing. The only question I had about that was, is for purposes of this appeal, that issue was not an issue that we briefed on appeal. It sort of changes our, it changes somewhat the appellate issues here, but if the court wants supplemental briefing. It changes what? It changes our appellate issues. That wasn't an issue that was raised on appeal. I think we always have to look to our jurisdiction county. I understand. And that's what I'm concerned about. What exactly, if this case is now in bankruptcy, is there any jurisdictional problem? Is there any kind of legal problem going forward here? And I think that needs to be briefed. I mean, my guess, counsel, is that the trustee has agreed to your representation under the condition that other people are paying the fee, but I think there really should be something filed because West Fork really is no longer the party. It's the bankruptcy estate. So I think at a minimum, you should be informing us where things stand by way of, you know, something that establishes what the trustee has done and what the authority is, which my guess is the trustee would readily provide you. I would assume so. Will there be an order with a timeframe for briefing, or how does the court want to proceed? Well, how long do you think that would take you? I imagine I could speak to the trustee tomorrow. I would think 20 days we should be able to. How many? I would think 20 days we should be able to pull together whatever we need, or less. I mean, I could probably speak to him this week. That seems like a really long time. Ten days? Yeah, that's fine. Okay. And you want to try to assist the court in this, too, on the other side? Absolutely. Well, why don't we give them ten days on either side? That's fine. Letter briefs, not more than ten pages long anyway, hopefully less. Absolutely. Okay. Did you want to add anything else? No, ma'am. Unless you have more questions. Thank you. Thank you both.